IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| BEVERLY PALMER, JEROME PALMER; <br><br> Plaintiffs, <br> v. <br><br> FORSYTH COUNTY GEORGIA, KEISHA MARTIN CHAMBLESS, IN HER INDIVIDUAL AND OFFICIAL CAPACITY AS CHIEF MAGISTRATE JUDGE <br><br> Defendants | CIVIL ACTION FILE NO.: <br><br> 2:24-CV-142-RWS <br><br><br> JURY DEMANDED |

# COMPLAINT

Plaintiff sues the Defendant as follows:

1. Under 28 U.S.C. § § 1331, and 1343 federal jurisdiction exists as to the Plaintiffs and Defendants under the Americans with Disabilities Act ("ADA") 42 U.S.C. §12102 and the Rehabilitation Act, 1973, 29 U.S.C. § 701, *et seq.*

2. Jurisdiction exists over all claims in this matter which are so related that they form part of the same case or controversy under 28 U.S.C. § 1367.

3. Under 28 U.S.C. §1391 and § 1402 venue is proper in the Court as a substantial part of the events or omissions giving rise to the claim occurred in this District and the Property that is the subject of this action is located in this District.

4. Defendant Chambless is named in her induvial and official capacity as the Chief Judge of the Forsyth Magistrate Court, its main policymaker and decision-maker under the ADA and Rehabilitation Act.

## Background

5. This matter involves property known as 1620 Town View Lane, Cumming GA, owned by Mohammad Nassir under a Limited Warranty Deed recorded on 09/11/15, Forsyth Book 7522, Page 0499, Tax Parcel Id No. 198414.

6. Plaintiffs leased the Property from Mr. Nassir and Sonata Corp. under a Lease by which Sonata and Mr. Nasir owed a warranty of habitability to the Plaintiffs which they deliberately violated by failing to repair the interior filled with deteriorated items, presenting a serious risk to their health and well-being

7. Plaintiffs worked to resolve the issues with Sonata and Mr. Nasir and were told to vacate the Home after Sonata breached the lease and warranty of repair, failed to make repairs and failed to maintain the Home, at the instance of Mr. Nasir ignoring requests of Plaintiffs to do so.

8. The above issues with the Home are detailed in texts from Plaintiffs and their counsel to Sonata and Nasir of 01/05/23 and 01/06/23 and 1/18/23 to which Sonata and Nasir failed to respond and conceded on those matters.

9. On 01/18/23, Nasir alone filed Forsyth Magistrate Dispossessory Case No. 2024CV0426-2 [The Case] against the Plaintiffs as to the Property in Forsyth

Magistrate Court www.forsythco.com/Departments-Offices/Magistrate-Court.

10.     Plaintiffs retained Mr. Wersant as defense counsel in the Dispossessory Case due to the misconduct of Sonata and Mr. Nassir.

11.     The Forsyth Magistrate Court is located in a small building at 1090 Tribble Gap Rd. Cumming, GA 30040, a precise image of which appears below:



12.     The Chief Magistrate of the Forsyth Magistrate Court is Defendant Keisha Martin Chambless, whose below photograph is on the Court's website.



13.     Forsyth Magistrate Court under Defendant Chambless inexplicably lacks an online docket making it difficult if not impossible to track case events unlike other Georgia courts with online dockets, particularly in Metro Atlanta.

14. Forsyth Magistrate Court lacks or does not permit remote or virtual appearance or access for litigants including those health issues such as such as Ms. Palmer unlike other Courts with remote and virtual access including those in Georgia, Florida, Maryland and California.

14. On 01/18/23, Mr. Nasir alone filed the Case against Plaintiffs in retaliation for their complaints about the condition of the Home contrary to O.C.G.A. § 44-24-13, 44-7-14.

15. On 2/01/23, the Case was served by the Sheriff on the Plaintiffs as shown by a return of service, who filed their Answer disclosing to the Court Sonata's many failures to repair the Property as required under the Lease.

16. The Magistrate Court then placed the Case back on the calendar for 03/16/23 contrary to the Bankruptcy Stay in a letter dated 03/03/23 signed by the Chief Magistrate Judge, showing Forsyth's disregard for the law.

17. On 03/03/23, Mr. Wersant filed Plaintiffs' Answer and Counterclaim for declaratory, equitable relief and a jury trial in the Case, based upon the misconduct of Sonata and Nassir, *requiring its transfer to Superior Court*,

18. On 04/12/23, Plaintiffs filed a Motion to Transfer the Case *instanter* to Superior Court due to the declaratory and equitable relief and jury demand in their Counterclaim over which Magistrate Court lacks subject matter jurisdiction.

19. On 04/13/23, the Case was tried in person, not virtually or remotely at Forsyth Magistrate Court, forcing Plaintiffs to appear, subjecting Ms. Palmer to the risk of serious health issues, contrary to the ADA and Rehabilitation Act.

20. At trial, the Plaintiffs were subjected to degrading, racist comments to another African American party in another case by Kevin J. Tallant, a part-time Forsyth Magistrate. He treated this party horribly and disrespectfully, calling her a liar, threatening her with contempt even though she had her proof of her case and supporting documents, evidencing Defendants' disregard for the law.

21. At trial, the Plaintiffs presented evidence their rent was paid and there were several dangerous repairs that was never repaired which also showed that Mr. Nassir lied on the stand on behalf of Sonata, about which Judge Tallant did nothing, again showing Defendants' disregard for the law.

22. On 04/21/23, Judge Tallant granted a Writ of Possession to issue in the Case, who ordered a transfer of just the Counterclaim to Superior Court.

23. *The Counterclaim was never transferred to Superior Court for reasons unexplained showing the disregard for the law by the Defendants.*

24. On 04/24/23, the Plaintiffs filed a Motion for Reconsideration of the Writ and again "*requested the transfer of this action to the Superior Court* about which the Defendants did nothing, *again, showing Forsyth's disregard for the law*.

25. On 04/24/23, Plaintiffs filed a Notice of Appeal of the Writ dismissed as untimely by the Court, through Defendant Chambless, who disregarded the Counterclaim in violation of the law and instead issued the Writ on 05/01/23.

26. On 05/8/23, Plaintiffs filed their second Motion for Reconsideration, addressing these issues including <u>*Defendants' unexplained refusal to transfer the Counterclaim, which Plaintiffs again requested.*</u>

## **Retaliation by the Defendants against the Plaintiffs**

27. On or about 04/24/23 or 05/08/23, Ms. Palmer was at the Forsyth Magistrate Courthouse to submit paperwork in person to have the case transferred with her Counterclaim to Superior Court, whose presence was required in person due to the Court's lack of online records facilities.

28. At that time, Ms. Palmer dealt with a Clerk at the Court, to whom she fully disclosed her health condition and the lack of online records and remote and virtual access, about which the Clerk was consciously and willfully indifferent.

29. At that time, Defendant Chambless asked Ms. Palmer why she was at the Court to submit and review the paperwork in her Case and Ms. Palmer replied she was doing so due to the Court's lack of online electronic records, contrary to the ADA, forcing her to place her health at risk by coming to the Court in person.

30. Defendant Chambless refused to address the failure of the Magistrate Court to provide online records or remote or virtual access in response to Ms.

Palmer's concerns about which she was consciously and willfully indifferent..

31. At that time, Defendant Chambless made derogatory and insulting comments about Mr. Wersant, calling him *"arrogant, incompetent and not worth her time and that he was a joke."*

32. Defendant Chambless and her staff laughed at her unprofessional comments as she also stated Mr. Wersant is *"such a jerk as an attorney"* and was sending Ms. Palmer to *"do his work for him"* given the lack of online facilities.

33. Defendant Chambless's unprofessional and hostile comments about Plaintiffs' counsel again show the disregard of the Defendants for the law.

34. Defendant Chambless declined to say when or if the Case would be transferred, often leaving paperwork regarding the Case on her desk for "review" for days, apparently in retaliation for Ms. Palmer's concerns about her handling of the Case and the lack of online records by the Forsyth Magistrate Court.

35. Defendant Chambless never transferred the Case until she entered a final order "closing" it on 06/15/23, again showing the disregard for the law of the Defendants in retaliation for Ms. Palmer's concerns about their lack of online records and remote and virtual access.

36. The Court's lack of online records, remote and virtual access to accommodate Ms. Palmer's disability violated the ADA and Rehabilitation Act of which Defendants were clearly aware and did not address to date, contrary to the

*"2017 HANDBOOK FOR GEORGIA COURT OFFICIALS ON COURTROOM ACCESSIBILITY FOR INDIVIDUALS WITH DISABILITIES."*

37. The 2017 Handbook states as follows:

"Including individuals with disabilities among people who count in composing "We the People," Congress understood in shaping the ADA, would sometimes require not blindfolded equality, but responsiveness to difference; *not indifference*, but accommodation". - Justice Ruth Bader Ginsburg, concurring in **Tennessee v. Lane**, 541 U.S. 509, 536 (2004). May 17, 2004 [Handbook, pp. 10]

38. The Defendants were consciously indifferent to Ms. Palmer's health condition, which extended to Mr. Palmer, her spouse as shown by these facts.

39. The 2017 Handbook states as follows:

"The Supreme Court decided in **Tennessee v. Lane** in 2004 (above, footnote 1) *that states are subject to lawsuits filed in federal court under Title II for money damages, injunctive relief, and declaratory relief; Congress had appropriately abrogated sovereign immunity when it enacted the ADA, specifically as to "judicial services*." [Handbook, pp. 10]

40. Defendants are subject to suit in this action as shown by these facts.

41. The 2017 Handbook states as follows:

"Courts must modify their general policies, practices, and procedures when necessary to allow a person with a disability to participate equally in court activities." [Handbook, pp. 18]

42. Defendants did not "modify their policies, practices and procedures" to allow Ms. Palmer to participate in "court activities" namely her Case.

43. The 2017 Handbook states as follows:

"The ADA also provides protections against discrimination for individuals who have a known relationship or association with persons who have disabilities. For example, a woman who does not have a disability is a defendant in a criminal proceeding; she seeks the presence of her husband at the 12 42 U.S.C. § 12102(2)(B). 13 A qualified individual with a disability is defined under Title II of the ADA at 42 U.S.C. § 12131(2). 17 trial, so that he can be informed about the proceeding and support her. Her husband, who is deaf and uses an oral interpreter as his preferred means of communication, requests and is denied an interpreter. Both the husband, who has a disability, and the woman, who is associated with a person with a disability, would be individuals protected by the ADA in this instance." [Handbook, pp. 17-18]

44. Defendants also discriminated and retaliated against Mr. Palmer due to Ms. Palmer's expressed need for accommodation due to her health condition for which Mr. Palmer is entitled to relief against them in this action.

45. The 2017 Handbook states as follows:

"Many policy modifications affect so many people with disabilities that policy changes and plans for accommodation should be made in advance of a request. Policies that commonly need to be modified include:
*Policies requiring in-person attendance at hearings or meetings for a person who, because of a disability, cannot physically come to court. Hearing schedules or briefing schedules, which may need to be adjusted to accommodate the needs of a person with a disability, if the need for adjustment is related to the disability*"[Handbook, pp. 19]

46. The Court lacks alternatives to *in-person* attendance at hearings for those who cannot attend court as shown by its website. <u>Magistrate Court</u>

(forsythco.com) showing the violations of the above standards by the Defendants.

47. The 2017 Handbook states as follows:

"Accessible electronic and information technology, such as accessible websites, tactile keys, and audio output on kiosks, and *electronic documents in accessible formats* are also auxiliary aids." [Handbook, pp. 20]

48. The lack of an online records by the Defendants shows their blatant violations of the above standards in the Handbook.

49. The 2017 Handbook states as follows:

"*Judges are the embodiment of justice. Everyone looks to the court to ensure full and effective participation for people with disabilities*. Top-level leadership and commitment are essential in developing an environment where access is not only a requirement but an expectation for all individuals." [Handbook, pp. 26]

50. Defendant Chambless's disparaging comments about Plaintiffs' counsel and her clear disregard for ADA and other laws show the violations of the above standards by the Defendants.

51. The 2017 Handbook states as follows:

"Courts can deliver electronic copies of documents (e.g., through a CD, on a USB drive, or by email) depending on the technology needs of the person making the request." [Handbook, pp. 49]

52. The lack of online records, remote and virtual access by the Court shows the violations of the above standards by the Defendants.

53. All conditions precedent to suit to occurred, were fulfilled, or waived, or their occurrence or fulfillment were unnecessary or futile.

### Count I:  ADA Violations against the Defendants

54. ¶¶ 1-53 are incorporated.

55. The ADA defines an individual with a disability as a person who (1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a "record of" such an impairment; or is (3) "regarded as" having such an impairment." 2 U.S.C. § 12102(1). "A person is also protected if he or she has a relationship or association with a person with a disability."

56. "A physical impairment is defined as any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, hemic and lymphatic, skin, and endocrine." 28 C.F.R. § 35.104

57. The Americans with Disabilities Act ("ADA") defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such impairment." 42 U.S.C. §12102.

58. The ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public

accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. §12182(a).

59. Under Defendant Chambless, Forsyth receives federal funds which is subject to the ADA as a place of "public accommodation." *See* 42 U.S.C. §12182(a)

60. The ADA requires public accommodations: to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden. 42 U.S.C. § 12182(b)(2)(A)(iii).

61. Plaintiffs requires special accommodations due to Ms. Palmer's medical condition, a "disability" under the ADA, including permitting remote or virtual hearings and electronic documents from the Court's docket, as the Defendants knew.

62. Defendants received notice of Plaintiffs' need for accommodation upon Ms. Palmer's appearances at the Courthouse in her mask, illustrating her disability and need for remote and virtual accommodations and electronic court records.

63. Defendants illegally discriminated against Plaintiffs in violation of the ADA as Defendants refused to allow the Plaintiffs to appear by remote or virtual appearances and provide Court documents in electronic format and retaliated

against her by refusing to transfer their Counterclaim, discriminatory acts violating the ADA, contrary to the clear in instructions in the 2017 Handbook.

64. The Defendants cited none of the applicable factors under the ADA to justify disregarding the ADA in this instance, offering no reasonable modifications of their policies and practices so the Plaintiffs could participate in the Case.

65. Defendants negligently maliciously, willfully and wantonly engaged in the ADA violations and other misconduct to harm Plaintiffs, who were injured as a result by being emotionally distressed and injured due to the illegal lack of accommodations by the Defendants and their retaliation in refusing to transfer the Counterclaim, harming Jerome Palmer by his association with Beverly Palmer.

65. Plaintiffs are entitled to their fees and costs against the Defendants under O.C.G.A. § 13-6-11 and the ADA for their unnecessary cost and expense to prosecute this action who acted in bad faith and were stubbornly litigious.

66. Defendants are liable to Plaintiffs for compensatory, consequential, special, nominal, punitive and exemplary damages, fees and costs for violating the ADA against whom the Plaintiffs demand judgment with other just relief.

**Count II: Violations of the Rehabilitation Act against the Defendants**

66.     ¶¶ 1-53 are incorporated.

67.     Section 504 of the Rehabilitation Act states (in part): "No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service." 29 U.S.C. § 794. 39.

68.     Defendants receive federal funding and did not accommodate the Plaintiffs due to Ms. Palmer's clear disability and retaliated against her instead.

69.     Defendants discriminated against Plaintiffs in violation of the RA which did not accommodate them and retaliated against them as shown above.

70.     Defendants negligently maliciously, willfully and wantonly engaged in these violations of the Act and other misconduct to harm Plaintiffs, who were injured including being emotionally distressed per her discharge and expulsion.

71.     Plaintiffs are entitled to their fees and costs against Defendants under O.C.G.A. § 13-6-11 and the Rehabilitation Act for the unnecessary cost and expense to bring this action who acted in bad faith and were stubbornly litigious.

72. Defendants are liable to Plaintiffs for compensatory, consequential, special, nominal, punitive and exemplary damages, fees and costs for violating the Rehabilitation Act against whom Plaintiffs demand judgment with other just relief.

### Count III: Declaratory and Equitable Relief against the Defendants

73. ¶¶ 1-53 are incorporated.

74. The Defendants violated the ADA and Rehabilitation Act with regard to the Plaintiffs as shown by the above facts.

75. The misconduct of the Defendants will continue unless ended.

76. The Plaintiffs lack an adequate remedy at law to end the misconduct of the Defendants and ensure their compliance with the ADA.

77. Under 28 U.S.C. § 2201 *et seq*, Fed. R. Civ. P. 65, the ADA and Rehabilitation Act, Plaintiffs request the Court declare and establish the violations of the ADA and Rehabilitation Act by the Defendants and enjoin their compliance with the ADA and Rehabilitation Act, including providing online records, remote and virtual access in court hearings and trials.

78. Plaintiffs also requests that the Court grant all other just relief such as their fees and costs against Defendants under O.C.G.A. § 13-6-11, the ADA and Rehabilitation Act for their unnecessary cost and expense to prosecute this action.

## **L.R. 5.1 (C) CERTIFICATE OF COMPLIANCE**

Under L.R. 5.1(C), I certify this document was prepared per L.R. 5.1(B) in Times Roman 14-point typeface.

Respectfully submitted this 17$^h$ day of June 2024.

By: */s/Paul G. Wersant*
Paul G. Wersant
N.D. Ga. 748341
Justice Law Firm Group LLC
40575 California Oaks Rd Ste D-2, Box 327
Murrieta, California 92562
Telephone: (678) 894-5876
Email: pwersant@gmail.com
Attorney for Plaintiffs